Filed 5/5/25  P. v. Khan CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MUHAMMAD KHAN,<br><br>    Defendant and Appellant. | H051468<br>(Santa Clara County<br> Super. Ct. No. B1683806) |

This is defendant Muhammad Khan's second appeal from his conviction by a jury for arson of an inhabited structure (Pen. Code,[1] § 451, subd. (b)) with an enhancement that he committed the arson by use of a device designed to accelerate the fire (§ 451.1, subd. (a)(5)).  This appeal relates to a mental health diversion proceeding (§ 1001.36) conducted on remand following an earlier direct appeal.

In Khan's first appeal, in accordance with *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*), a different panel of this court (hereafter, the *Khan* court) conditionally reversed the judgment and remanded the matter for a hearing

---

[1] All further unspecified statutory references are to the Penal Code.

on Khan's eligibility for mental health diversion under section 1001.36. (See *People v. Khan* (Oct. 13, 2020, H045524) [nonpub. opn.] (*Khan*).[2])

On remand, the trial court declined to grant Khan mental health diversion, concluding that Kahn did not satisfy two of the four suitability criteria in section 1001.36, subdivision (c), and regardless, diversion was unwarranted.

In this second appeal, Khan contends the trial court abused its discretion by denying him diversion because he had satisfied the eligibility and suitability criteria under section 1001.36 and the court's findings to the contrary were not supported by substantial evidence.

For the reasons explained below, we affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

A. *Trial Evidence*

A detailed description of the evidence presented at Khan's trial appears in the *Khan* opinion. (*Khan*, *supra*, H045524.) Both parties in this appeal rely on the facts of Khan's offense as summarized in that opinion. Under these circumstances, we incorporate into this opinion the *Khan* court's description of the trial evidence. (*Ibid.*)

---

[2] The October 2020 *Khan* opinion is included in the instant appellate record. Additionally, on our own motion, we take judicial notice of that opinion. (See Evid. Code, §§ 452, subd. (d), 459.) The *Khan* opinion followed a grant of review by the California Supreme Court of this court's initial opinion, which preceded *Frahs*. The initial opinion affirmed the judgment, concluding that section 1001.36 did not apply retroactively to Khan. Pursuant to an order of the Supreme Court, this court vacated its initial opinion and reconsidered the case in light of *Frahs*. After receiving supplemental briefing, this court issued its October 2020 *Khan* opinion and remanded the matter for a hearing under section 1001.36.

Briefly, in November 2015, Khan released several cockroaches inside his place of employment. In December 2015, Khan's employer terminated his employment. About 6:15 a.m. on January 9, 2016, Khan set fire to the garage of his former supervisor's home using gasoline and rags or pieces of towel. The former supervisor, his wife, and their daughter were sleeping inside the home at the time. (See *Khan*, *supra*, H045524.)

B. *Conviction and Sentence*

The jury found Kahn guilty of arson of an inhabited structure (§ 451, subd. (b)) and found true an enhancement allegation that Khan committed the arson using a device designed to accelerate the fire (§ 451.1, subd. (a)(5)). (*Khan*, *supra*, H045524.)

The trial court sentenced Khan to nine years in prison, comprising five years for the arson conviction plus four years for the sentence enhancement. (*Khan*, *supra*, H045524.)

C. *First Appeal*

While Khan's direct appeal was pending, the Legislature enacted section 1001.36, which provides for pretrial diversion of persons with mental disorders. (See *Khan*, *supra*, H045524; Stats. 2018, ch. 34, § 24.) In *Frahs*, our Supreme Court held that section 1001.36 applies retroactively to nonfinal judgments. (*Frahs*, *supra*, 9 Cal.5th at p. 640.)

After our Supreme Court decided *Frahs*, the *Khan* court concluded that section 1001.36 applied to this case and Khan seemingly satisfied a threshold eligibility requirement for diversion (i.e., he suffered from a qualifying mental disorder). The *Khan* court based its conclusion on an evaluating psychologist's report (prepared in December 2017 for Khan's sentencing (§ 457)) that suggested Khan had developed major depressive disorder in the months before the arson offense. (*Khan*, *supra*, H045524.) Accordingly, the

3

*Khan* court conditionally reversed the judgment and remanded for the trial court to consider Khan's eligibility for diversion under section 1001.36. (*Khan, supra*, H045524.)

D. *Remand Proceedings*

On remand, in April 2023, Khan (through his public defender) filed an application for mental health diversion (application). Khan contended he is eligible for diversion under section 1001.36, subdivision (b). Based on the December 2017 psychologist's report by Dr. Robert Perez, Khan asserted that his "arson offense was a direct product of his mental illness and substance abuse" and that "[o]ver the course of the three to six months preceding the incident, [he] clearly developed a significant psychiatric illness (major depressive disorder) and he 'clearly experienced suicidal ideation on one or more occasions prior to the offense.' " (Italics omitted.) Khan further asserted: "On the specific date of the offense, [Khan] [] had been experiencing increasing levels of depression and despair. At the time he was despondent, having panic attacks, and considering suicide as a way out. [Khan] was acting out based on severe depression and suicidal ideation; together with confused thought processes, perception of reality, and decreased tolerance for stress. Ultimately, he succumbed to the symptoms of his mental illness in commission of the offense."

Regarding the first suitability criterion listed in section 1001.36— which requires that a qualified mental health expert opine the defendant's symptoms would respond to mental health treatment (§ 1001.36, subd. (c)(1))—Khan contended he satisfied that criterion based on Dr. Perez's December 2017 report, a December 2022 behavioral health assessment generated by marriage and family therapist Eric Covotta, and a March 2023

4

"memorandum – release plan" (capitalization, underscoring & boldface omitted) authored by public defender social worker Don Le.[3]

Regarding the additional suitability criterion requiring that the defendant will not pose an unreasonable risk of danger to public safety if treated in the community (§ 1001.36, subd. (c)(4)), Khan noted that he had received some mental health treatment while incarcerated posttrial, was sober for seven years, "and the life stressors that arose in 2016 are either unlikely to occur, or can be prevented through a structured re-entry to society." Khan further noted his lack of criminal history, his "decorated academic history and pedigree," his past "community and volunteer work," his positive conduct while incarcerated, his well-developed intellectual and cognitive abilities, his support from family and friends, and his present awareness of "the need to remain engaged in outpatient mental health programming, clean and sober, obedient to the continued protective orders, and in the company of his close knit and supportive family in Virginia."

Additionally, Khan provided the trial court a March 2023 mental health evaluation authored by licensed professional counselor Thomas Delaney. Khan explained in his application that Delaney's treatment recommendations included outpatient treatment to help Khan "reacclimate to the world and support his mental illness and substance abuse risks every step of the way." Khan described the plan as requiring him to "participate in weekly outpatient" mental health treatment services and recommending that

---

[3] Khan subsequently filed a supplemental pleading that included a June 2023 letter by therapist Covotta clarifying a statement that he made in his December 2022 assessment regarding Khan's current symptoms of depression and posttraumatic stress disorder. The trial court considered that letter along with the other expert submissions when ruling on Khan's application.

he "work[] through [his] reported mental abuse in college and depression issues to cope with social interaction."[4] Khan also described the support he would receive during treatment from "his close knit and capable family."

The Santa Clara County District Attorney filed an opposition to Khan's application for diversion. The district attorney conceded that Khan suffered from a qualifying mental disorder that was a significant factor in his commission of the arson (see § 1001.36, subd. (b)(1)–(2).) The district attorney also conceded that Khan consented to diversion (see *id.*, subd. (c)(2)) and had expressed a willingness to comply with treatment (see *id.*, subd. (c)(3)).

The district attorney, however, contested whether Khan had provided proof that his symptoms would respond to mental health treatment (see § 1001.36, subd. (c)(1)). The district attorney further asserted that Khan would pose an unreasonable risk of danger to public safety if he were treated in the community (see *id.*, subd. (c)(4)). The district attorney invoked "the continuous, retaliatory nature of [Khan]'s actions" prior to and during his offense, "the planning, preparation, and thought that [Khan] put into his commission of the offense," and "the dangerous nature of [Khan]'s actions during the incident."

In June and July 2023, the trial court heard oral argument from the parties on Khan's application and took the matter under submission.[5]

---

[4] Although Khan's application asserts that counselor Delaney "specifically articulated a plan that would require [him] to participate in *weekly* outpatient [m]ental [h]ealth [t]reatment [s]ervices (italics added), Delaney's recommendation did not state a frequency for the proposed treatment, and we do not find any reference to "weekly" treatment in Delaney's evaluation.

[5] The same bench officer presided at Khan's trial and ruled on his application for mental health diversion.

In September 2023, the trial court denied Khan's application in an oral ruling.

The trial court noted that the district attorney had conceded Khan's eligibility for diversion under the requirements set forth in section 1001.36, subdivision (b). Nevertheless, regarding the suitability criteria in section 1001.36, subdivision (c), the court concluded that Khan had not demonstrated his suitability for diversion under subdivision (c)(1).[6]

The trial court found that "Khan has provided no opinion of a qualified mental health expert explaining how [his] symptoms of the mental health disorder causing, contributing to, or motivating criminal behavior, would respond to mental health treatment." The court explained that Khan "did not submit any specific treatment plan" or have an expert explain how he "would respond to that specific treatment plan." The court further opined that under section 1001.36, subdivision (f)(1)(A)(i), it "is not satisfied that any plan of Mr. Khan['s] constitutes an inpatient or outpatient program of mental health treatment that will meet the specialized mental health treatment needs of Mr. Khan."[7]

---

[6] Section 1001.36, subdivision (c) provides in pertinent part: "For any defendant who satisfies the eligibility requirements in subdivision (b), the court must consider whether the defendant is suitable for pretrial diversion. A defendant is suitable for pretrial diversion if all of the following criteria are met: [¶] (1) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment."

[7] Section 1001.36, subdivision (f) provides in pertinent part: "(1) 'Pretrial diversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment, subject to all of the following: [¶] (A)(i) The court is satisfied that the recommended inpatient or outpatient

The trial court discussed Khan's expert submissions and described its reasons for concluding that Khan had not demonstrated suitability for diversion under section 1001.36, subdivision (c)(1) or subdivision (f)(1)(A)(i). The court explained that Dr. Perez's December 2017 report "contained no statement how Mr. Khan's symptoms would respond to mental health treatment." The court further noted that the report included a description of Khan's preoffense psychiatric treatment and medications, but "[d]espite that treatment, Mr. Khan committed the offense in this case."

Regarding therapist Covotta's December 2022 assessment and June 2023 letter, the trial court noted that Covotta did not describe any treatment plan and only stated that Khan reported having treatment set up in Virginia, as well as family support.

The trial court found that social worker Le's March 2023 release plan simply referenced counselor Delaney's treatment recommendations and "did not itself lay out any mental health treatment plan, and certainly did not describe how Mr. Khan's symptoms of the mental health disorder . . . would respond to that mental health treatment."

Regarding counselor Delaney's March 2023 mental health evaluation, the trial court noted inconsistencies between Khan's past self-reporting to Dr. Perez and his current statements to Delaney. The court also noted that Delaney recommended "only that Mr. Khan participate in outpatient mental health treatment services to assist him [to] reintegrate appropriately back into mainstream society, to increase self-esteem, confidence and efficacy[, and to] [w]ork[] through his reported sexual and mental abuse issues to cope with social interaction."

---

program of mental health treatment will meet the specialized mental health treatment needs of the defendant."

8

The trial court opined that Delaney's treatment recommendation "is a plan to reintegrate back into mainstream society, it is not a mental health treatment plan for addressing any diagnosis of major depressive disorder," "the mental health disorder upon which this [application] is based." The court noted that Khan, in his self-reporting to Delaney, had "denied any depression and [] any issues." The court further noted that Delaney failed to review Dr. Perez's December 2017 report, "did not consider the circumstances of the crime, or any evidence about the crime," did not "describe Mr. Khan's symptoms of the major depressive disorder that purportedly caused, contributed to, or motivated the criminal behavior," and did not "render any opinion that the symptoms that caused, contributed to, or motivated the criminal behavior, would respond to mental health treatment." The court further concluded that Delaney's treatment recommendation was unsatisfactory as to meeting "the specialized mental health treatment needs of the defendant."

Additionally, and "[a]s an independent basis for denying the application," the trial court found that Khan is unsuitable for diversion under section 1001.36, subdivision (c)(4), because he would pose an unreasonable risk of danger to public safety.[8]

The trial court stated that it had considered the circumstances of Khan's offense and explained that the offense could have been charged as an attempted homicide "based on the facts of the case and the evidence at trial."

---

[8] Section 1001.36, subdivision (c)(4) provides: "The defendant will not pose an unreasonable risk of danger to public safety, as defined in [s]ection 1170.18, if treated in the community. The court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate."

The court acknowledged that Khan had no previous criminal history but noted Khan's preoffense misconduct, revenge planning, and premeditation that culminated in an escalatory attempt to burn his former supervisor's house down. The court further noted that Khan had recently self-reported that he "now is, in effect, fine, with no depression and no symptoms. [¶] But there is no evidence Mr. Khan took any medication or received any specific mental health treatment in custody, or to address his diagnosis of major depression disorder." The court reiterated the lack of a relevant treatment plan and its concern that Khan had committed the arson offense despite having previously received psychiatric treatment and medication. Considering the factors stated in section 1001.36, subdivision (c)(4), "including the lack of a specific treatment plan," the court found that Khan "is likely to commit a super strike."

Lastly, the trial court explained that even if the statute's eligibility requirements and suitability criteria are met, it retains the discretion to deny mental health diversion. The court acknowledged the Legislature's intent that mental health diversion under section 1001.36 "apply as broadly as possible," and the statute's purpose "to keep people with mental disorders from entering and re-entering the criminal justice system, while protecting public safety, to give counties discretion in developing and implementing diversion across a continuum of care setting, and to provide mental health rehabilitative services."

After considering "all those purposes," the trial court concluded that even if the suitability criteria had been met in this case, it "would not exercise [its] discretion to grant mental health diversion." The court reiterated that Khan had received treatment before "he committed this premeditated, planned act of revenge" and had not "provided any expert

explanation of how the symptoms of the diagnosed major depressive disorder caused the crime, and how those specific symptoms would respond to a mental health treatment plan tailored to [him]." The court further opined that Khan's proposed plan for treatment related to his reintegration into society is based on his unreliable self-reports.

Upon denying Khan's application, the trial court (pursuant to the remand directions in *Khan*) reinstated Khan's conviction and original sentence and ordered him transferred back to the California Department of Corrections and Rehabilitation.

Khan appealed.

## II. DISCUSSION

Khan claims the trial court abused its discretion when denying his application for mental health diversion under section 1001.36 because "its findings are not supported by substantial evidence." He asserts that he "submitted a treatment plan designed to treat his then-existing mental health needs, which demonstrated that he would respond to treatment," and he "did not pose an unreasonable risk of danger to public safety."

The Attorney General responds that the trial court correctly found, based on substantial evidence, that Khan was not suitable for diversion because he provided no opinion from a qualified expert explaining how the symptoms of the mental health disorder underlying his criminal behavior would respond to mental health treatment, and because he posed an unreasonable risk to the community. The Attorney General further asserts that Khan failed to challenge in his opening brief the trial court's alternative ruling that even if he had met the suitability criteria, the court would still not exercise its discretion to grant diversion.

A. *Legal Principles*

"In 2018, the Legislature enacted sections 1001.35 and 1001.36 to create a pretrial diversion program for defendants with certain mental health disorders. [Citation.] Pretrial diversion 'allows for the suspension of criminal proceedings and potential dismissal of charges upon successful completion of mental health treatment.' " (*Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 133 (*Vaughn*).) " 'The stated purpose of this legislation is to keep people with mental disorders from entering and reentering the criminal justice system while protecting public safety, to give counties discretion in developing and implementing diversion across a continuum of care settings, and to provide mental health rehabilitative services.' " (*Id.* at p. 138.)

"Section 1001.36, subdivisions (b) and (c), sets forth the criteria for eligibility and suitability for diversion. Eligibility entails satisfaction of two prongs: (1) a defendant has been diagnosed with a recognized mental health disorder, and (2) the disorder was 'a significant factor in the commission of the charged offense.' (§ 1001.36, subd. (b)(2).) The second prong is presumptively satisfied 'unless there is clear and convincing evidence that [the disorder] was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense.' " (*Vaughn, supra*, 105 Cal.App.5th at p. 133, fn. omitted.)

"Once eligibility is established, a trial court 'must consider whether the defendant is suitable for pretrial diversion.' (§ 1001.36, subd. (c).) A defendant is suitable if: (1) in the opinion of a qualified mental health expert, the defendant's mental health disorder would respond to treatment; (2) the defendant consents to diversion and agrees to waive their speedy trial rights; (3) the defendant agrees to comply with treatment requirements; and (4) the defendant will not pose an 'unreasonable risk of danger to public safety' as

defined in section 1170.18 if treated in the community.  (*Id*., subd. (c)(1)–(4).)" (*Vaughn*, *supra*, 105 Cal.App.5th at p. 134.)

Section 1170.18 defines " 'unreasonable risk of danger to public safety' " as "an unreasonable risk that the petitioner will commit a new violent felony" within the meaning of section 667, subdivision (e)(2)(C)(iv).  (§ 1170.18, subd. (c).)  That provision of section 667 sets forth eight categories of offenses that are colloquially referred to as "super strikes," including "[a]ny homicide offense, including any attempted homicide offense, defined in [s]ections 187 to 191.5, inclusive."  (§ 667, subd. (e)(2)(C)(iv)(IV); *People v. Moine* (2021) 62 Cal.App.5th 440, 449 [noting that the " ' "super strikes" ' " include murder and attempted murder].)

"If the defendant is both eligible and suitable, the trial court must also be satisfied 'that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant.' "  (*Vaughn*, *supra*, 105 Cal.App.5th at p. 134, citing § 1001.36, subd. (f)(1)(A)(i) & *Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 892 ["This is not an additional eligibility or suitability requirement the defendant must meet.  Rather, subdivision (f)(1) of section 1001.36 read as a whole appears to contemplate an ongoing assessment to assure that defendants will receive appropriate treatment for their particular conditions as part of the diversion program."].)

"Finally, the statute gives the trial court discretion to deny diversion even if the statutory requirements are met:  '[T]he court *may, in its discretion, . . .* grant pretrial diversion to a defendant' after the court considers the two eligibility and four suitability requirements."  (*Vaughn*, *supra*, 105 Cal.App.5th at p. 134, citing, inter alia, § 1001.36, subd. (a).) " 'Ultimately [] diversion under section 1001.36 is discretionary, not

13

mandatory.' " (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 887.) However, "[t]his residual discretion is not unfettered and must be exercised ' "consistent with the principles and purpose of the governing law." ' " (*Vaughn*, at p. 135.)

B. *Standard of Review*

We review a trial court's ruling on mental health diversion for abuse of discretion. (*People v. Graham* (2024) 102 Cal.App.5th 787, 795.) " 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*Ibid.*)

"We will uphold the trial court's factual findings if supported by substantial evidence." (*People v. Oneal* (2021) 64 Cal.App.5th 581, 589.) " ' "Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence." [Citation.] However, "[a] reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork; a finding of fact must be an inference drawn from evidence rather than a mere speculation as to probabilities without evidence." ' " (*Vaughn*, *supra*, 105 Cal.App.5th at p. 135.)

" 'It is appellant's burden on appeal to establish an abuse of discretion and prejudice.' " (*People v. Pacheco* (2022) 75 Cal.App.5th 207, 213.)

C. *Analysis*

There is no dispute that Khan is eligible for mental health diversion under section 1001.36, subdivision (b). The contested issue is Khan's suitability for diversion. We are not persuaded the trial court abused its

14

discretion in finding Khan unsuitable under the first criterion of section 1001.36, subdivision (c).

The first suitability criterion calls for an "opinion of a qualified mental health expert" that "the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment." (§ 1001.36, subd. (c)(1).) Substantial evidence supported the trial court's finding that Khan failed to show the symptoms of his major depression—the mental disorder that was a significant factor in his arson offense (see *id.*, subd. (b)(2))—would respond to treatment.

In his application, Khan asserted that his diagnosis of major depressive disorder rendered him eligible for mental health diversion under section 1001.36, subdivision (b). In a report generated for Khan's original sentencing (before section 1001.36 was enacted), Dr. Perez described Khan's psychiatric history based on Khan's self-reporting and medical records. Dr. Perez confirmed a diagnosis of "[m]ajor depression recurrent ([m]oderate to [s]evere)," and concluded it was "likely that a combination of acute stressors (threatened interruption in health insurance, failure at a job interview, being advised of probable chronic pain), chronic mental illness ([m]ajor [d]epression) and acute intoxication ([c]annabis and alcohol) led to the unfortunate behavior" (i.e., the arson offense).

Dr. Perez further concluded that Khan "is clearly a highly educated, intelligent individual. [His] [i]ntellectual and cognitive abilities are well developed. He obviously has significant potential to recover from these incidents and lead a productive life."

Neither Dr. Perez's conclusions nor his other observations in the December 2017 report offer any opinion about the responsiveness of Khan's symptoms of major depression to mental health treatment. Thus, the trial

15

court's assessment of Dr. Perez's report and opinions as deficient with respect to the first criterion (§ 1001.36, subd. (c)(1)) is correct and supported by the record.

Likewise, the trial court correctly found that therapist Covotta's December 2022 assessment and June 2023 letter did not describe how Khan's symptoms of depression would respond to mental health treatment. Covotta's assessment and letter simply do not address that topic.

The trial court also rightly concluded that social worker Le's release plan offered no opinion about the responsiveness of Khan's symptoms to treatment. Le mentioned Khan's posttraumatic stress related to severe hazing that he had experienced during college in Virginia and that Khan suffered "a major depressive episode" after he moved to California. Le also referenced counselor Delaney's evaluation and stated that "[t]he recommended level of care as a result of [Delaney's] assessment is weekly outpatient psychotherapy for social reintegration, independent living skills, and general mental health." (Boldface omitted.) Le described Khan as "amenable and excited to engage in further treatment," and opined that if Khan were allowed to receive treatment in Virginia (upon release from custody), his supportive network would be able to assist with his basic needs and "pro-social engagement to help support his mental health." Le, however, did not discuss whether Khan's psychiatric symptoms related to major depression (or posttraumatic stress disorder) would respond to mental health treatment.

Counselor Delaney evaluated Khan in February 2023 "to assess his mental health status and determine if there is a need for [m]ental [h]ealth [t]reatment [s]ervices." Delaney based his evaluation on a clinical interview

of Khan and two self-report scales that are designed to measure depression and anxiety—both of which returned scores for Khan that were "negligible."

According to Delaney, Khan reported a previous diagnosis of "[d]epression by Dr. Perez," but Khan said he "did not take any psychotropic medication for it," had "no current mental health diagnosis," and no longer had the symptoms of "low energy and lack of motivation" that existed at the time of his offense. Khan further reported a belief that he was sexually abused twice as a child and that he was subjected to "some extreme hazing" while in college between 2008 and 2012. In the diagnosis section of the evaluation, Delaney merely noted Khan's report of Dr. Perez's prior diagnosis of depression and stated that Khan "did not give more details of when he was diagnosed."

As mentioned *ante*, Delaney's evaluation recommended that Khan (1) participate in outpatient mental health treatment to assist with postincarceration reintegration, increase his "self-esteem, confidence, and efficacy," and work through "his reported sexual and mental abuse issues to cope with social interactions" and (2) "[t]ake[] advantage of his support network to prevent self-isolation and enhance his ability to ask for help when necessary for success with independent living skills."

Like the other expert submissions that Khan provided to the trial court, counselor Delaney's evaluation did not offer a treatment plan for addressing major depression or opine on whether the symptoms of the major depression that caused, contributed to, or motivated Khan's criminal behavior "would respond to mental health treatment." (§ 1001.36, subd. (c)(1).) In fact, Delaney's recommendations do not appear to be directed at symptomatology related to any specifically identified mental disorder. Thus, considering the content of Delaney's evaluation, the record supports the

17

court's finding that Delaney's evaluation did not show Khan is suitable for mental health diversion under the statute's first suitability criterion.

For these reasons, we reject Khan's claim that the trial court made findings under section 1001.36, subdivision (c)(1) that were not supported by substantial evidence.

To the extent that Khan further claims the trial court erred by focusing on the symptoms of his major depressive disorder—rather than his current, less pronounced symptoms of depression and posttraumatic stress disorder—in denying his application, that claim is unpersuasive under the terms of section 1001.36. Eligibility for diversion under section 1001.36, subdivision (b) turns on a diagnosis of a qualifying mental disorder that "was a significant factor in the commission of the charged offense." (*Id*., subd. (b)(2).) Correspondingly, the first criterion in subdivision (c) of section 1001.36 requires an expert opinion about "the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior." (*Id*., subd. (c)(1).) Thus, by its terms, section 1001.36 does not allow a defendant to satisfy the first criterion of subdivision (c) by offering an expert opinion about symptoms that are unconnecteda to a qualifying mental disorder or symptoms tethered to a mental disorder that did not cause, contribute to, or motivate the criminal behavior.

Because we conclude the trial court acted within its discretion in denying Khan's application for mental health diversion based on Khan's failure to meet the first criterion of section 1001.36, subdivision (c), we need not address Khan's additional contention that there is no substantial evidence supporting the court's finding on the fourth criterion (i.e., Khan would pose an unreasonable risk of danger to public safety if he were treated in the community) (*id*., subd. (c)(4)). Section 1001.36 states that "[a]

18

defendant is suitable for pretrial diversion *if all of the following* [four] *criteria are met*." (*Id*., subd. (c), italics added.) Given our affirmance of the trial court's conclusion that Khan did not meet the first criterion, that ground alone is sufficient to uphold the trial court's denial of Khan's application for mental health diversion.

For the same reason, we do not address the Attorney General's contention that we should uphold the trial court's denial of diversion based on its unchallenged, alternative ruling that, irrespective of any satisfaction of the suitability criteria, it would not exercise its discretion to grant Khan mental health diversion.

## III. DISPOSITION

The judgment is affirmed.

_____
Danner, Acting P. J.

WE CONCUR:

_____
Lie, J.

_____
Bromberg, J.

**H051468**
***People v. Khan***